## SALES OF INTOXICANTS IN ROSE LAW TERRITORY IN QUANTITIES OF MORE THAN A GALLON.

Circuit Court of Tuscarawas County.

WALTER SCHEU V. THE STATE OF OHIO.

Decided, May 21, 1909.

*Criminal Law—Sales of Intoxicating Liquors in Quantities of more than a Gallon—From Manufactories Located in Dry Territory—Exceptions Under the Dow Law and the Rose Law—Manager Liable for Sales by a Clerk Made in His Absence but Under His General Directions.*

1. Inasmuch as the Rose local option law provides its own exceptions, it is not permissible to read into it the exceptions found in the Dow law as to sales of intoxicating liquor at the manufactory and by the manufacturer in quantities of one gallon or more at any one time; but such sales are prohibited within a county where the Rose law has become operative.

2. Where, in a county which has been voted "dry" under the Rose law, beer is sold from a brewery in quantities of one gallon or more in conformity with general instructions by the manager, he is liable to prosecution therefor notwithstanding he was absent from the brewery at the time the sale was made.

*A. D. Metz, J. F. Greene* and *J. D. Bold,* for plaintiff in error. *J. F. Wilkin* and *D. R. Wilkin,* contra.

DONAHUE, J. (orally); TAGGART, J., and VOORHEES, J., concur.

The plaintiff in error brings this proceeding in this court to reverse the judgment of the common pleas court rendered in an

action wherein the State of Ohio prosecuted Walter Scheu for the illegal sale of intoxicating liquors.

There are two questions made in this record, and the one we shall notice first is the contention that Walter Scheu is not responsible for the sale of liquor made by Mr. Murphy, one of the clerks. The last question asked Walter Scheu on cross-examination is as follows:

"I want to ask you Mr. Scheu, whether or not this beer sold to George Kuemerly, although made in your absence, was made in conformity to general instructions given by you to Mr. Murphy?" Ans. "Yes, sir."

But for the last question and answer, there is nothing in the record that would show Mr. Scheu is responsible for this sale. True, the record shows he was the manager of this brewery, but the policy of the brewery company was determined by its directors, and up to this time Mr. Scheu had not been connected by the evidence with the sale, but this answer shows that, if this sale is illegal, Mr. Scheu is equally responsible with Mr. Murphy.

The important question, however, and the one in which counsel on both sides are particularly interested, is whether or not this brewing company may sell at its brewery beer manufactured there, in quantities of a gallon or more, notwithstanding the local option election in this county resulted in a majority against the sale.

This is an important question and one of considerable importance throughout the state.

Looking to the law itself we find no exceptions made in favor of manufacturers or brewing companies any more than any other individual. Yet it is insisted that Section 8 of the Dow law applies, and I take it that counsel's idea of "quantities of a gallon or more" is suggested by the language of Section 8 of the Dow law, which is as follows:

"Trafficking in intoxicating liquors, as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors

from the raw material, and the sale thereof at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time."

Now if that obtains in this case, of course this sale was not illegal. And if nothing appeared to the contrary in the Rose local option law itself, we would be disposed to construe all of these sections together giving effect to every act and parts of acts related to the common subject, but the Rose local option law leaves nothing to construe in this respect, but in plain and unequivocal language provides its own exceptions. Section 3 of that act is as follows:

."The phrase 'intoxicating liquors' as used in this act shall be construed to mean any distilled, malt, vinous or any intoxicating liquor whatever. But nothing in this act shall be construed to prevent the selling of intoxicating liquors at retail by a regular druggist for exclusively known medicinal, pharmaceutical, scientific, mechanical or sacramental purposes; and when sold for medicinal purposes it shall be sold only in good faith upon a written prescription, signed and dated in good faith by a reputable physician in active practice and the prescription used but once."

· This is a re-enactment of the greater part of Section 8 of the Dow law. If there could have been any implication whatever that Section 8 of the Dow law was to obtain, then it would be useless to reiterate this language in Section 3. It is clearly the intention of the Legislature to limit the exceptions to those found in Section 3 in the Rose act, and not that the exceptions in the Dow law should apply. That is the language of the law, and it is the duty of the court to interpret the law as it is written without adding to or taking from and without attempting to decide upon the practicability or advisability of it.

In the case of *Slingluff* v. *Weaver*, 66 Ohio St., page 621, the Supreme Court say:

"But the intent of the law-makers is to be sought first of all in the language employed, and, if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation."

We think this language is as plain and clear as it is possible to write the English language; there is no possibility of being mistaken about it.  The law, as it is written, prevents the sale under any and all other circumstances, except the circumstances named in Section 3 of the act, and any attempt to enlarge these exceptions would be nothing short of judicial legislation.

We are not unmindful of the argument of counsel that such a construction jeopardizes or perhaps even makes worthless, property of enormous value used in the manufacture of this product, but that argument can not affect the correct interpretation of the law, and is proper only for the purpose of calling our attention to the seriousness of the question presented, and that a conclusion that would work such result ought not lightly to be arrived at, but this question is hardly an open one in Ohio.  Construing similar legislation, the Supreme Court in the 61st Ohio St., at page 597, say:

"The sale of beer as a beverage, any quantity, whether by the manufacturer or not, is prohibited in a township where the people have availed themselves of the provisions of the local option law."

Let us change that language by substituting the word "county" for "township."  "The sale of beer as a beverage, in any quantity, whether by the manufacturer or not, is prohibited in a county where the people have availed themselves of the provisions of the local option law."  It is clear to us that the Supreme Court has passed upon substantially the same statute as the one in question and has held against the contention of the plaintiff in error.

This court is of the opinion that the judgment of the common pleas court must be affirmed.  Exceptions will be noted.